This case, your honor, is reported number 210-0865, people in the state of Illinois and the families of Mr. Jesus Perez, defendant of Perez. Arguably the defendant is Kathleen Hamill, arguably a plea, Ms. Mary Beth Burns. Good morning, your honors. Good morning, counsel. I'm Kathleen Hamill from the Office of the State Appellate Defender, representing the defendant appellant, Jesus Perez. After a jury trial, Mr. Perez was convicted of two counts of aggravated criminal sexual abuse. This morning we are asking for a new trial based on the way that evidence of uncharged sexual conduct was handled in the trial court. The defendant was tried on charges that he sexually abused a complainant named S.C. Count one alleged that he followed her breasts, count two alleged that he pushed his penis against her buttocks, and that both of these, both counts alleged that these acts happened at a time when S.C. was under the age of 13. And the defendant was over 17. Although the indictment alleged that the conduct occurred between June 1st, 2006 and November 30th, 2007, because S.C. turned 13 in January 2007, the only acts that could have supported the charges had to have occurred before that date. Mr. Perez also was charged with having abused S.C.'s niece, who was pretty much a contemporary, she was three years younger, D.W. However, prior to trial, the count that addressed conduct that was committed against D.W. was severed on the defendant's motion. For the purposes of trial, after the severance, the state moved to admit the evidence that it had concerning the actions against D.W. as well as other uncharged acts against S.C. under 115-7.3, which is our statute that allows evidence of uncharged sex crimes to be, or of other crimes, I should say, of other sexual offenses to be presented against an accused to show his propensity to commit such offenses. Counsel, let me just interject a threshold question. Are you arguing that the other crimes evidence in this case was not relevant and probative under 115-7.3? Are you agreeing that it is relevant? I am agreeing. In fact, I'm actually saying that it was actually too relevant, too probative, because it really kind of turned the trial into a discussion of all of these things that he had done without discriminating between which conduct was a charged conduct and which conduct was not. So you're not challenging the relevant and probative part of it? No. The prejudicial aspect, is that what you're saying? Yes, yes. We are focused on the prejudice. Judge Phillips, who was the pretrial judge, allowed the motion to admit all the evidence under 115-7.3. And when the case went to trial, Judge Petoniak, who was the trial judge, refused to reconsider it. So when the trial began, it was understood by everybody that the information regarding the uncharged sexual conduct was going to come in as proof of propensity. It was by everybody, that is, except for the jury itself. What ensued was a trial where at no time during the opening statements or during any of the witnesses' testimony did anyone tell the jury that one of the stories Wait a second. The jury was aware of the birth dates, and it was brought up in closing argument quite clearly. In closing argument. The distinguishment between what happened in the summer of 06 versus everything else. But that's the only time. And our position is that the jury had already listened to an entire trial during which they didn't know which of the stories they were hearing was the story that they should be paying attention to as proof of the charged offense. And they got a limiting instruction, which actually your client got the benefit of the bargain on. The limiting instruction was a very strange thing. It was presented, the state tried to present its own instruction, which had been prepared with the sexual conduct in mind. And the court, for whatever reason, refused to give that instruction. Are you arguing or claiming that the defect in this trial was that the jurors were kept in the dark until closing arguments and the instruction was read to them as to just exactly what facts were relevant material for the proof that they had to make? Yeah, we're saying that the only time the jurors were informed that the incident that supported these charges and the only incident that could possibly support the charges was the one that occurred inside the bed where DWSC and the defendant are all in the same bed. And so the only thing that was said was that the state, my guess is that the prosecutor realized that nobody had made this point yet. And so the prosecutor did say in his closing argument that the evidence, that we're only focusing, that this is the only thing that is charged. However, that was after having made an opening statement in which the prosecutor did not distinguish between the charge and the uncharged conduct, but rather just told these stories, one story after another, about all the terrible things that the defendant had done. What about in the case, is it reversible error in the case law to not give a limiting instruction? What about the trial judge never gives a limiting instruction at the time the evidence is presented? Is that error in the case law in and of itself? I think it depends on the circumstances. And here we are saying that it is error because we have this situation where the language of the charge was very vague. It was just fondled breasts and pushed a penis against buttocks and had nothing about location, nothing about dates that wouldn't include other, the dates of the offenses, including some, the dates again in the indictment actually included time during which the offenses could not have occurred. But the indictment was never read. So that's a red herring, isn't it? That's another problem, that the indictment wasn't read. And so the jury, until the end of the trial, really didn't even know what to be paying attention to. You know, which evidence to single out as this is the charged conduct. Aren't they supposed to be paying attention to everything? Isn't that what we tell them at the beginning? Well, yes, that's true. But they have to also know when they're listening to what is critical. You know, what is evidence of propensity versus what is evidence of the charged conduct. Here this could have been eliminated so quickly, this problem, so easily. It could have been, but is it necessarily reversible here? Our position is that it is because we think that there was a situation was created in which Mr. Perez may have been convicted based on proof of something other than the charged conduct. And we say that because the evidence that was presented that addressed the charged conduct was the weakest evidence in the entire trial. It was completely uncorroborated, and the corroboration that you would expect to have was conspicuously absent. Did defense counsel file a motion for a bill of particulars? No, I don't think so in this case. Can you give me some rationale as to why? Possibly because it was pretty apparent that of all the evidence that they were talking about bringing in, the evidence, the incident that did in fact underlie the charges was the only incident that could have been prosecuted. One of them was, or at least under aggravated criminal sexual abuse. One of them occurred in Wisconsin, so it was not in our jurisdiction. And one of the incidents, yeah, the last incident, the one at the ironing board, took place after the young one was 13. And so that left only the one that happened in the bed, but the jurors weren't told that. And that was the most dubious story, because the other child, D.W., who was in the bed, never said that she was aware that anything was happening. S.C.'s brother, who was staying in a room outside the bedroom, in the living room, there was evidence that the defendant would have to walk past him back and forth in order to be able to come and go from the girl's room. And he didn't say anything about having seen the defendant do that. And most importantly, S.C. didn't mention to D.W. or to her brother, Earl, or anybody else, this happened. Well, are you arguing that the integrity of the system requires a reversal? Are you claiming that the result would have been different had the indictment been read or there had been some particularity presented or particulars presented during opening statements? I say that the reliability of the verdict is questionable because of the way this happened. So the outcome could have been different had the jurors realized all we're looking at is this particular story, which is the least believable of all the stories. Here's what I'm struggling with. Is the trial court required under the law to read the indictment first? No. Okay. Is the trial court required to give limiting instructions at the time the evidence is presented? Well, um... Required to. I don't mean... Well, by required to, you mean absolutely every single time. Is it reversible error not to do it? I don't know if there are circumstances in which it would not be reversible error. I mean, I'm sure sometimes it would be harmless. In a situation like this where there are so many... As an abstract legal proposition, I don't know that I agree. I think the case law says it's not reversible error in and of itself not to give a limiting instruction at the time, although it should be given at the end. So if it's not error to read the indictment, to not read the indictment, if it's not error not to give a limiting instruction, how do we end up with reversible error then at the end? Because at some point during the trial, the judge has to make it clear to the jury what is the charge conduct. Here... Well, didn't he do that at the end? Only the... It says that they're paying attention to the evidence. They have to limit the instruction before they go in to deliberate, do they not? Well, the only person who told them that, you know, what was the charge conduct was the prosecutor. His argument was followed by the general jury instruction that is given at all trials, and, you know, what's given here where they are told that these states are... that the parties closing arguments are not evidence, that they should look to the court for the law, and that the arguments are simply the attorney's views of the case, you know, as opposed to, you know, it is the prosecutor's job to tell you what is the charged evidence. That isn't what the law is, and they are actually told it's kind of negated by that instruction. So what is the rule of law that you want us to announce in this case in light of the fact that you can see that some of these matters are not necessarily automatically reversible error? So what rule do we announce in this case? I would say in cases where there is multiple sex acts presented and only one that is charged, that the court must make an effort, must take pains to ensure that the jury can differentiate between the two by the charge and the uncharged conduct by simply saying this is not charged conduct, this is introduced with a limited purpose of considering it for propensity at the time that it comes in, and certainly at the end. And I also think that a verdict form that distinguishes between the conduct on the basis of location perhaps or time also would make good sense. This is such a common error in sex crimes. It is very, very common for the state to charge just a few acts and then to prove a multitude of acts. And it does, we have a statute that says you can do this for propensity, but if it slips over into a situation where the jury is just kind of confused and just simply feel like what the state has proved is that this guy does this stuff all the time, they are not going to focus on whether the charged conduct actually happened. How do we know the jury was confused in this case? Well, we know that they reached their verdict in 39 minutes, which you could say simply I think is a strong indication that they thought he must have done something. Would it also be that they found the complaining witness to be extraordinarily credible? They may have, except that she is not extraordinarily credible when it comes to the charged conduct. There she is missing corroboration that you would expect to have, namely that from DW. With all due respect, counsel, that's your perspective on the evidence, but do we have anything that would indicate that they just believed her? It's true they didn't ask any questions, so I guess we don't really know. Is it your position that the more incidents that are related, the less discretion the trial court has giving limiting instructions? Yes, I believe I would say not so much less discretion, but I think more responsibility to make sure. Is it giving limiting instructions and exercising discretion? I thought that's what the standard of review is. Is it not? It is. Okay, well then, if it's the standard of review as to whether or not the court abused its discretion in giving or not giving any instructions, is it your position that the more instances of incidents that are not being charged, the greater possibility or probability that the jury will be confused or overwhelmed and limiting instructions would be more valuable than they would be if there's only one or two other charges raised? I would agree to some extent, although it would, again, depend on how much evidence came in regarding the other crimes as well, so that, you know, what is the potential for confusion and the similarity between the language of the charge, such as it is known to the jury, and the uncharged conduct? The potential for confusion, simply, the possibility that this person was convicted based on proof of conduct other than the charged conduct. Would you like to make a final summation? Well, I simply ask Your Honors to find that this trial was not fair, that these verdicts are not sufficiently reliable to satisfy our standard of justice and to reverse these convictions and to remand this cause for a new trial. Okay, thanks. Do you wish to respond? Good morning, Your Honors. My name is Mary Beth Burns. May it please the court, we've come here this morning to ask this court to affirm the convictions of Jesus Perez. I think to continue the conversation that this court had with counsel, I totally understand that counsel's concern is not with relevance but with whether what was admitted was too prejudicial and whether the prejudice was exacerbated by the failure to separate out uncharged conduct at the point that it was admitted. And I think under heard, the court says, the Supreme Court has said, it is a better practice but it is not always necessary. I think here, I would concede that because of the closeness in time of the events, that perhaps it would have been a better thing if the court had said, prior to the Wisconsin discussion and prior to the basement discussion, you will now hear evidence of conduct that is not part of the charged misconduct of the defendant. It is up to you to determine whether this occurred and what weight to put on it. However, there's a difference in saying that that might be a better practice and in saying that a defendant received a fundamentally unfair trial because it didn't occur. Can you tell us how many other incidents of uncharged conduct beyond those charged in the indictment came into evidence in this case? I believe it was three. The first came in from the events in Wisconsin and they were relevant because it showed how the abuse started. And that was uncharged because it was outside the jurisdiction and could not have been charged. The charged conduct was conduct that occurred while S.C. was still 12 years old. There were then two, I believe, incidents that occurred after she turned 13. One was an after school incident where she wouldn't allow the defendant into the house and he called her mother and her mother said, don't be a brat, let him into the house. And then the second one was an occurrence in the basement when she was ironing and her mother happened to look down and saw him hugging her. I thought it was the grandmother. No, I thought it was D.W.'s grandmother. I believe it was S.C.'s actual mother, I believe. It's D.W.'s grandmother. I think it was S.C.'s mother, it was D.W.'s grandmother. So the case went to trial on how many counts in the indictment? Two. And there were three uncharged incidents, correct? I believe so. Does this case run afoul of the Cardamone decision at all? Certainly not. And why is that? Because Cardamone, as this Court discussed in Walston, talks about the very far end of the amount of other crimes evidence that was brought in under Section 115.3, I believe it is. And this is a very small amount. And in this case, the small amount that was admitted was admitted after a hearing before Judge Phillips, who specifically said, yes, the surrounding circumstances are relevant. No, you can't bring in anything. Bring in your best three or four. And based on the determination that surrounding circumstances are relevant, the other crimes evidence here told both the story of how something occurred, how it ended, and why it wasn't reported. Because the important thing about the situation where she locked the defendant out of the house and her family said, don't be a brat, bring him in, explains why a 12-year-old girl did not believe that she could trust her family to believe what she was saying had occurred when the defendant was very much a family member, clearly a trusted family member, and somebody who had access to her own home as well as the home that he shared with her sister and her sister's daughter. So you're saying we shouldn't focus in on simply the number. We should consider your allegation that the other evidence that was presented gives context to the history and circumstances of the charges. Yes, Your Honor. I think that that's extremely important because this isn't a matter of piling on as to the defendant because I think what Cardamone says flat out is even if something's relevant and even if the statute might well permit it, you cannot pile on because then you do invite concerns about undue prejudice. Well, there's something like 250, 300 uncharged offenses, right? Right. Right. So again, Cardamone is, I think it reminds me of the cases People v. Blue and People v. Johnson as far as closing argument cases. You know when you see it when it's extreme. Right. Exactly. And again, Cardamone was a very rare situation because it was someone who had a significant amount of access to a great number of young girls during a long period of time. This is a much different situation. This is a situation that's within a family, and it was important to show the surrounding circumstances of how this occurred and also as to protecting the credibility of the victim why it wasn't reported immediately. And I think that because Judge Phillips in his initial ruling was very careful in saying only things that were part of surrounding circumstances and only things limited to three or four events could come in,  obviously evidence prejudice is the other party. When the state puts out evidence, it expects to prejudice the defendant. When the defendant puts out a case, it expects to prejudice the defense case. The concern is undue prejudice. What's the purpose of opening statements? To set out, I suppose, a roadmap for the jury and what they should expect to hear. Would it be reasonable to say that it's the first element of tell them what you're going to say, and then the trial is say it, and then closing arguments are tell them what you've said? Yes. If that's the case, is it your belief or your opinion that opening statements actually told the jurors what was going to be said during the trial? I believe so. My recollection, again, it's months ago that I read this, but my recollection is that the opening statements from the prosecution said that, you know, there had been a pattern of abuse, and I think that from the defense it was there are reasons to doubt the credibility, and I believe that was what was stated in the opening. Well, did they tell the jury which incident it was that they were supposed to focus their cumulative hours of truth-seeking towards? I do not believe opening statements testified which conduct was which. However, I think that I don't buy the premise of the question in that where only evidence that is relevant can be presented, I don't know that we would want to ever tell the jury you're going to hear a great deal of evidence but only focus on two events. You know, the point to admitting the evidence is that they listen to all of it. What about your opposing counsel's argument that, okay, the indictment wasn't read, that may not be a reversible error in and of itself, a limiting instruction wasn't given when the evidence came in, which is recommended, as you know, to better practice, so these things in and of themselves may not be error, but you put it all together. Is there an argument? How do you respond that it didn't impact the fairness of the trial when these things were not done? Well, there isn't that much to put together, though. I mean, the truth is Judge Phillips invited the parties. If they wanted limiting instructions. What are you saying to Judge Phillips? He wasn't the one that presided over the trial. He's the one that made the initial ruling, and Judge Patconiak said that he would not touch that ruling. They did. There was motions practiced before Judge Patconiak as they were going to trial, and Judge Patconiak said, Judge Phillips ruled on this, I won't touch that ruling. And so we're talking about Judge Phillips because it's his ruling that we're actually basing this on. Did Judge Phillips say, I'm not going to give limiting instructions about Wisconsin or the other incident? No, what Judge Phillips said was, under Donahoe, it's questionable where the evidence is admissible for any purpose whether limiting instruction is necessary. And you parties, if you want instructions or if you want to discuss it, come to me right before trial, and we will discuss it at that point. When the defense wanted to reopen the ruling because the defense position was the other crime evidence should not come in, period. And so the defense counsel tried to reopen the ruling. How are you reopening the ruling when he says, come to me before trial, and I will listen to the arguments then? Well, again, what he tried to reopen was admissibility in and of itself, not whether there would be instructions. And in fact, when they were before Judge Patconiak, neither party discussed limiting instructions, either contemporaneous instructions or jury instructions. So at the point when Judge Phillips had invited the discussion, the discussion did not occur. And defense counsel never requested specifying instructions at the point evidence was presented. Are these issues forfeited? The second issue has a plain error component to it that we argued in our brief that, you know, that we argued in our brief that it did not meet plain error because Hurd has said that it's not necessary to have limiting, you're specifying instructions, I guess specifying instructions is perhaps a better term than limiting instructions, in that under Donovan you're not limiting necessarily how it can be considered, but you want to specify perhaps that this is not part of a charging instrument. Isn't it true that this jury was never told that they could use the uncharged evidence as propensity? Correct. Does that make a difference? You know, it's interesting because in my office we were discussing this yesterday. I don't think, and this is perhaps anti-prosecutorial of me, but I don't think. Be careful now. You're on the record. Your colleagues are here, so. It's like exposing confidential opinions of your colleagues. Really, could you all just go like, me, me, me, me, please, before. This is like specifying something you shouldn't pay any attention to. I think the historic common law concern is that you don't want other crimes' evidence considered for propensity. I think the point to Donovan is it can be considered for anything, and so you don't necessarily need specific instructions. However, you don't have to tell a jury they can consider something for propensity. The point of the common law limiting instructions is to tell them not to, to tell them that you're limited to considering it for such and such reason. I don't think you have to tell a jury this evidence is coming in and you can consider it for propensity. I think the natural course of events is that unless limited to some other consideration, they'll do it on their own. So I don't think that under Donoho and under the statute, you're telling them that they can consider it for propensity. I think what you're doing is not limiting them in any manner as to how they consider it. That it's their determination whether the event occurred and what way to accord it. So I don't think it's a matter of saying, in addition to identity or presence or whatever else, you can also think of this as propensity. I think the natural, the nature of things is such that if you're not told that you can't, you will consider it for propensity. Is there a difference between propensity or the concept of propensity and the concept of the defendant is an evil person? You know, I think once you get into the nature of evil, I think there are a lot of crimes that are disturbing, but somebody is an evil person. He deserves to be in prison, although not necessarily because of this particular charge. I think that that would be the core of the defense argument, which is when you have other crimes evidence, you are saying this is a bad person and whether he committed this offense, he committed something. I think with Donoho's saying- Well, he should be in jail or in prison. I don't think, and again, where you're looking at a concern of undue or unfair prejudice, that's the ongoing concern. I think when you have a situation like this where the judge who agreed that it was admissible did so in a limited fashion, limited it both in number and in nature and quality, that the danger of the undue, unfair prejudice is not present. I think the ongoing concern with all forms of other crimes evidence is that if you have too much, if it is not related to the actual individual story, if it is piling on, that that is the concern, that you may be saying to the jury, this is a bad person and, you know, get him off the streets, he's a danger. That's the reason that the common law has traditionally limited it and it's the reason that even under Donoho and, you know, Nicardemo, you can't pile it on. You have to have it under, I think, fairly close control both to the quality of it as it relates to the actual charge conduct and as to the quantity of it. You know, it's a different thing if you charge two offenses and you bring in 45 uncharged. Do you see any conflict between what you just related over the last five or ten minutes and the presumption of innocence that's supposed to be accorded a defendant throughout the trial prior to the time the jury retires the delivery? No. And again, that's why, despite the fact that under this provision, other crimes evidence is admissible for any relevant purpose, it's the reason that trial courts still are expected to exercise their discretion in determining the nature of the evidence, how it relates to the charge conduct, and how much of it there is going to be admitted. Again, that's what we ask our trial courts to do, to exercise their discretion, and our position is that the trial court did so here so the defendant was not a newly prejudiced. Bottom line, what's the takeaway from this case? I'm sorry? Justice Hudson asked counsel, what's the rule that she wanted enunciated? What is the rule that you want enunciated here with respect to these instructions? I guess that I don't want a rule as much as I want an affirmance. The rule already comes from her, which is it may be a better practice to specify, but it's not specifically error not to. I think that that's a good rule. I think that, again, we ask our trial courts to draw these distinctions and exercise their discretion in drawing the distinctions. Judge Phillips, I think, was open to a discussion of what would have been an appropriate way to handle the evidence at the point it was presented. Judge Patconiac, based on his ruling, apparently didn't think it was necessary. Perhaps he would have thought it was necessary had it been more than three, I believe it was either three or four other crimes, and perhaps had it been more, he would have thought the specification at the point that the evidence was admitted would have been necessary. Should the better practice ever become the rule? I think that's up to the Supreme Court. However, a case like this shouldn't set the rule because, in this case, the defendant was not a duly prejudiced. I don't think a rule should be altered or changed unless there's real danger of prejudice, and I don't think this case presents it. Rules don't have to be broken in order for someone not to get a fair trial, you're aware of that. Yes, Your Honor. However, in this case, neither was a rule broken nor was the defendant denied a fair trial. They're not mutually inclusive or exclusive. Exactly. And again, this case, I don't think, presents anything that would support the concern. The underlying concern to all of these things is whether the defendant received a fair trial. I don't think this case raises a significant enough question to alter rules or to alter the determination below. Yes, Your Honor. Thank you, Your Honor. Counsel, do you wish to offer a reply? Just a few things. Sure. Let's say, first of all, that I do agree with you, Justice DeLaron, when you released the implication that I picked up from your question about whether there's a difference between propensity and simply an evil person. And I think that one of the dangers of evidence of propensity is that it does sometimes leave the listener to conclude that. And rather than see it the way a lawyer will or a judge will look at evidence, which is always inside of the, within the constraints of what we know it is properly presented for, that lay people are more likely to become prejudiced, and that's why we need to take care. When we are using or allowing more dangerous evidence to be presented to jurors, that the context that we know is there has to be explained to the jurors at the time that the evidence is presented. I also do want to point out that we are a little closer to cardamom than may appear on the surface, because in addition to the three incidents that were the focus of our brief that were detailed, it is also the case that D.W. did refer to what happened to her as having happened like 20 times. Right, but the difference in cardamom is each one of those little girls got up and told the entire details of each one of those incidents times 200 and some times. Here, D.W. said this happened 20 times.  It is, and that's why I didn't focus on it in the briefs. I considered the detailed ones to be the significant ones, but it is still the case that the jurors, if they paid attention, did hear 20 from D.W., 10 breast touches from S.C., and 18 buttocks touches. So we are, ratio-wise, we are 2 to somewhere over 40, whereas cardamom was 26 to at the most 257. So I believe we are in the same ballpark. I do understand that cases have again and again distinguished cardamom on its facts and have recognized that it is the outer bounds of what is acceptable, or what is unacceptable. But we still, just over the outer bounds of what is acceptable, but we believe that cardamom is not the only case in which a person has been prejudiced. The same sort of prejudice happened here, and we do ask this court to reverse these convictions and to remand for a new trial. Thank you. Thank you, sir. All right, we'll be in recess for a few minutes.